[No. 915.  Decided July 25, 1893.]

WALTER D. McBRYDE, *Appellant*, v. THE CITY OF MONTESANO *et al.*, *Respondents*.

MUNICIPAL CORPORATIONS—VALIDATION OF INDEBTEDNESS—SUBMISSION TO VOTERS.

The act of congress prohibiting municipal indebtedness in the cities of Washington Territory in excess of four per cent. of the taxable property became a part of every city charter, and an indebtedness incurred in excess thereof may be validated under §5 of the act of February 26, 1890 (Laws, p. 226).

Although an indebtedness incurred by a city in Washington Territory could not have been ratified by territorial law because in excess of the limitation fixed by congress, yet such indebtedness may be validated under an act of the state legislature which has succeeded to all the powers of the territorial legislature and of congress in the matter of jurisdiction over cities.

The creation of void indebtedness by a city subsequent to the lawful voting of bonds for the purpose of borrowing money is not ground for restraining the issuance of the bonds.

While a proposition to borrow money to fund old debts and a proposition to borrow money for future municipal indebtedness may be submitted at the same election, the two cannot be united in one proposition, so as to have one expression of the voter answer both propositions.

*Appeal from Superior Court, Chehalis County.*

*George T. Quinby*, and *Bausman, Kelleher & Emory*, for appellant.

*B. F. Jacobs*, for respondents.

The opinion of the court was delivered by

STILES, J.—The city of Montesano, under its first charter, was limited in its power to create a debt, except for ordinary current expenses, to the sum of $6,000. Acts 1883, p. 268.  Under its present charter, approved January 20, 1886, the limit was placed at $10,000. Acts

1885-86, p. 373, § 106. But the act of congress of June 30, 1886, changed the basis of limitation to 4 per cent. of the taxable property, and this continued to be the law governing the city until Washington became a state, November 11, 1889, when the act of 1886 became again operative until the act of February 26, 1890 (Laws, p. 225), extended the limitation to 1½ per cent. of the taxable property in the city, absolutely, and to 5 per cent. upon a popular vote. August 7, 1885, Montesano issued ten-year warrants or promissory notes for $6,000 — the full limit of its authority under the act of 1883 — for the purpose of "constructing an elevated roadway," and these warrants are now outstanding. September 2, 1889, like warrants were issued for $6,224.75 for an electric light plant. At the date of this second issue of warrants, the complaint alleges that the last property assessment was but $165,852, upon which 4 per cent. was only $6,634.08. Therefore, under the act of congress, the void excess of debt created by the electric light warrants was $5,590.67. Under the charter, it would have been but $2,224.75. But, in providing for and holding the election hereinafter mentioned, all of the electric light warrants were treated as tainted by the same invalidity. The complaint also shows that at the date of the election, August 26, 1892, there was further indebtedness of the city, in the sum of $7,775.25, for general purposes, and that the assessment limiting that city was $972,531, 1½ per cent. of which was $14,587.96. Therefore, the legal debt, $13,775.25, including the roadway warrants and the current expense debt, but excluding the electric light warrants, was within the constitutional limit, without any resort to popular vote. Since August 22, 1892, warrants representing the debt for current expenses have been called in and paid, but others, for new current expenses since that date, have been issued, so that at the commencement of the action it is alleged that the

total city indebtedness was $19,480.22.   But, if we under-
stand the pleading, this sum should be reduced $6,224.75,
unless the electric light debt was validated at the election
in August, 1892.    The election mentioned was held upon
two propositions: First, to validate the electric light debt;
second, to borrow $25,000 by the issuance of bonds.

1. The act of March 7, 1891 (Acts, p. 267), does not
apply to this case, because the sole ground of invalidity
curable thereby is an excess of 1½ per cent. of assessables,
which is a new limitation coming in with the constitution.
But the act of February 26, 1890 (Acts, p. 226, § 5), does
apply.    As against the operation of this act, appellant's
first claim is that the language of the act limits it to in-
debtedness which was void because it exceeded the charter
amount; but this may be conceded, and the act still apply,
for we think it may be fairly held that the act of congress
prohibiting indebtedness in excess of 4 per cent. became
and was a part of the charter of every city in the terri-
tories.    Another objection is, that the legislature could not
validate, or permit to be validated, indebtedness which it
could not have authorized originally by reason of the con-
gressional prohibition; but this was a contract which the
territorial legislature could have authorized but for the act
of congress, and congress could have authorized it at its
pleasure.    The territorial legislature could not have vali-
dated the contract, but the state legislature, which has
now taken the place of both the territorial legislature and
congress in the matter of jurisdiction over cities, can do
anything that either or both of those bodies could have
done, and, therefore, it can validate this contract.   Cooley,
Const. Lim., p. 379.

2. Having found, therefore, that the electric light debt
was validated, as it appears, by a three-fifths vote, it fol-
lows that on August 26, 1892, the legal indebtedness of
Montesano was the sum total of the roadway warrants, the

electric light warrants and the general warrants, viz., $20,-
000.   This sum was $4,412.04 in excess of the 1½ per
cent. limit.   But between the date of the election, August
26th, and September 2d, all of the general warrants were
paid, so that the city on the latter date had a new margin
for general purposes of $2,363.21; and this sum it has
now again exceeded by the issue of new warrants for $7,-
255.47, leaving it with $4,892.26 of invalid warrants out-
standing, no vote having been taken upon the question of
issuing these excess warrants.   But we have gone into this
analysis of the city's condition more to illustrate the ap-
pellant's position than anything else, for, as we understand
him, he urges this void excess indebtedness created since
August 29, 1892, as a reason why certain bonds voted at
the same election should not be issued.   Plainly, however,
it could not operate in any such way.   If the purposes
for which bonds were voted were lawful, and the election
was regular, the subsequent illegal action of the city in
some other direction would have. no effect upon its prior
legal action.   Money realized from bonds should not be
used to pay off the subsequent void debt, and appellant,
as a taxpayer, would, in proper time, have his action to
prevent such use.

3.   By ordinance 178, the city council ordered the sub-
mission of a proposition to borrow $25,000 upon time
bonds, under the act of March 7, 1891 (Acts, p. 261).
The purposes for which this money was to be borrowed
were set forth in the ordinance as—(1) To pay outstand-
ing indebtedness, $20,000; (2) for the purchase of fire appa-
ratus, $1,500; (3) for the purchase of a lot of land, and
the erection of a city hall and jail thereon, $3,500.   But
one ballot was used, "Bonds, yes," and "Bonds, no;"
and appellant contends that this was irregular, inasmuch
as there were two propositions involved, viz., a proposition
to fund $20,000 of old debts, and a proposition to borrow

$5,000 for future purposes. We agree with him in this, notwithstanding the argument of the respondent that the statute is broad in its permission to borrow money for municipal purposes, and that the acquisition of money to pay debts is a strictly municipal purpose. The act in question looks entirely to the future needs of cities, and leaves to other statutes in existence the matter of providing for old debts by funding. The act under which Montesano is authorized to fund her debt is the same one under which she voted to validate the electric light debt (§ 4, act Feb. 26, 1890); and it will be found that, whenever the city council sees fit to fund any of her lawful indebtedness, it can do so without any popular vote at all. It is probable that the city authorities were in this instance misled by the act of March 7, 1891 (Acts, p. 269), where a permission is granted to cities to submit propositions to fund at the same election with propositions to ratify void indebtedness. But this last act does not make it necessary thus to submit, and does not interfere with the act of 1890. Yet it was proper enough to submit a proposition to fund at the election which was held, but it could not be united with the proposition to borrow money for future purposes, so as to have one expression of the voter answer both propositions. They might be decided by the same ballot, but the voter must have an opportunity to express himself separately as to each one. For these reasons, the whole election under ordinance 178 was void. Respondent claims that under our decision in *Seymour v. Tacoma*, 6 Wash. 427 (33 Pac. Rep. 1059), part of the result of the election may be saved; but the ruling in the former case does not apply here. People voted very largely on the proposition to issue bonds for $25,000; but it might be that a feeling may have existed in favor of putting the old debts in good shape, which induced many to vote for the whole loan who would not have voted to borrow to buy fire apparatus and build a city hall.

Appellant was entitled to have the demurrer to his complaint overruled; and the judgment is reversed, and the cause remanded for that purpose, and for further proceedings.

Dunbar, C. J., and Hoyt, Anders and Scott, JJ., concur.