STATE OF IOWA ex rel. HARRY MITCHELL et al., Appellants, v. RAY McCHESNEY et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—Separate **Vote.** On the proposition to merge several school corporations into one consolidated independent district, a school corporation is not entitled to a separate vote because a *part* of the corporate limits of a town lies within such school corporation, with less than 200 population residing on such *part.* (Sec. 2794-a, Code Suppl. Supp., 1915; 38 G. A., Ch. 149.)

**STATUTES:** Construction—Supplying or Changing Words. Principle reaffirmed that the court has no authority to supply or insert or change words in a plain and unambiguous statute, and thereby give the statute a meaning different from that imported by its terms.

*Appeal from Jefferson District Court.*—C. W. VERMILION, Judge.

JANUARY 13, 1921.

ACTION in quo warranto, to test the legality of the formation of the consolidated independent school district of Packwood, Iowa. It is claimed that the election was invalid. The incorporated town of Packwood has about 250 population, 200 of them in the south part of town, in one school corporation, and the others in another. Two ballot boxes were used. The voters residing in the south part of town voted with a part of the voters residing outside the town limits, and those living in the north part voted with others in outside territory. The specific complaint is that the strictly rural voters, or farmers, residing outside of the town limits were not permitted to vote by themselves, and entirely separate from all the voters residing in the town. Defendants' demurrer to the petition was sustained, and the petition. dismissed, with judgment against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*J. C. McCoid* and *Richard C. Leggett,* for appellants.

*Starr & Jordan* and *Ralph H. Munro,* for appellees.

PRESTON, J.—A plat, though not set out in the record, but made up therefrom, will explain the situation more quickly and more understandingly than an attempt to describe.

No. 9 Polk, including the south part of the town situated in it, voted together, in one ballot box; and appellant's complaint is that No. 1 Polk and Nos. 3 and 4 Black Hawk were

1. SCHOOLS AND SCHOOL DISTRICTS: consolidated districts: separate vote.

compelled to vote with No. 4 Polk, including the north part of the town in No. 4. It is alleged in the petition that a majority of the votes cast by the voters residing upon the territory outside of the two school corporations containing the town were against the proposition to create the consolidated district. It may not be very material, for the purposes of this case, but the petition does not allege that a majority of the voters residing outside the corporate limits of the town were opposed to the consolidation. The election was held January 28, 1920, and

comes under Chapter 149, Acts of the Thirty-eighth General Assembly. The proposition carried, and the consolidated district was established. The vote is not given. The act of the general assembly last referred to provides:

"When it is proposed to include in such school district a school corporation containing a city, town or village with a population of 200 or more inhabitants, the voters residing upon the territory outside the limits of the said school corporation shall vote separately upon the proposition to create such new district. The judges of said election shall provide separate ballot boxes in which shall be deposited the votes cast by the qualified voters from their respective territory, and if a majority of the votes cast by the qualified voters residing either within or without the limits of the aforesaid school corporation is against the proposition to form a consolidated independent corporation, then the proposed corporation shall not be formed."

Appellants' contention is that the statute is ambiguous, and that resort must be had to a construction of it. They say that the letter "a" before the words "school corporation" in the second line of the statute above quoted should be omitted, and that the words "school corporation" in the three places where it occurs should be "school corporations," so as to read that, when it is proposed to include in such school district, school corporations containing a city, town, etc., the voters residing upon the territory outside the limits of the said school corporations shall vote separately, and if a majority of the votes cast by the voters residing either within or without the limits of the aforesaid school corporations, and so on. The thought is that the town, being partly in Polk No. 4 and partly in Polk No. 9, is within those two school corporations, and that, this being so, the statute should be construed as plaintiffs contend, to meet the situation presented under the circumstances of this case.

It is claimed that authority for this is given by Section 48, Paragraph 3, of the Code, which provides that words importing a singular number may be extended to several persons or things,

2. STATUTES: construction: supplying or changing words.

and words importing the plural number may be applied to one person or thing, and that words importing the masculine gender only may be extended to females. There is no question but that

this may be done in a proper case, and to carry out the purposes of an act; but it is just as clear that this ought not to be done when it would have the effect of destroying or changing a statute the language of which is plain, or where its application violates reason and nullifies the intent of the legislature, or where the words are plain and unambiguous. *State v. Gardner,* 174 Iowa 748, 759. Substantially the same provision is found in Chapter 432, Acts of the Thirty-seventh General Assembly, except that the population of the town was given at 100. These two are amendatory of Section 2794-a, Supplemental Supplement to the Code, 1915, enacted by the thirty-sixth, thirty-fourth, and thirty-first general assemblies. The last of the earlier enactments, for which the present statute was substituted, provided that: *

"When it is proposed to include in such district a city, or town or village, the voters residing upon the territory outside the incorporated limits of such city, town or village, shall vote separately upon the proposition for the creation of such new district. The judges of said election shall provide separate ballot boxes in which shall be deposited the votes cast by the voters from their respective territory, and if a majority of the votes cast by the electors residing either within or without the limits of such city, town or village, is against the proposition to form a consolidated independent corporation, then the proposed corporation shall not be formed." Code Supplement, 1913, Section 2794-a.

Appellants' contention is that the interests of the rural voters and the interests of those living in a town are antagonistic, and that the concentrated vote in a town would vote taxes upon the voters residing outside the town. It is not claimed that the interests ought to be any different, so far as the general subject of education is concerned. The argument for appellant is that it was the intention of the legislature that those residing in a town and those outside should vote separately. That is precisely what the statute provided, before the later amendments, as shown by the quotation above set out from Code Supplement, 1913, Section 2794-a. But this was changed by the amendment enacted by the thirty-eighth general assembly, and as it now stands. The legislature had the power to make

the change, and there was some purpose in it. Appellees' contention is that the evil, or one of the evils, which would be remedied by the later enactment was that, in the larger school districts, containing the smaller towns or villages, the rural population was, in most cases, enabled to defeat all propositions for consolidation, and that to permit the rural district outside the town of Packwood to vote with No. 9, because there were a few of its inhabitants within the limits of the town, would be to defeat the very purpose of the new legislation on the subject. Other reasons are suggested for the last amendment. However this may be, we think that the statute as it now stands is plain and unambiguous, and that a forced or strained construction ought not to be indulged in, to meet the exigencies of the particular situation now presented. It seems to us that to construe the present statute as contended by appellants would be assuming legislative authority by the court. The language used by the legislature, if plain and unambiguous, as it seems to us this language is, must be given effect by the courts. Furthermore, as said, to construe the present statute as contended for by appellants would be to nullify the present statute, and leave it standing as it was before it was amended,—that is, that those living within and without the town should vote separately. True, the two school corporations do contain the town of about 250 population, but the southern part of the town in school corporation No. 9 contains the 200, the limit or number fixed by the statute. These 200 voters are in school corporation No. 9 Polk, and we think the statute contemplates that these 200 and the balance of No. 9 Polk should vote together. It is true, also, that there are a few voters in the north part of the town in No. 4 Polk, but these are less than 200. The present statute, unlike the provision it supersedes, does not provide that the voters residing within the incorporated limits of the town shall vote separately from those residing outside such corporate limits. There is now no provision in the statute, as there was formerly, that the voters residing upon the territory outside the incorporated limits of the town should vote separately. Appellants' contention is that it was the intention of the legislature, as expressed in the last statute, that they should vote separately. This is not quite the real contention, either. The real contention, as we

understand it, is that No. 4 Polk and the north part of the town should vote by itself, and use one ballot box, and the south part of the town and the balance of No. 9 should vote by itself, in another ballot box. In other words, as they put it, No. 1 Polk and Nos. 3 and 4 Black Hawk were compelled to vote with No. 4 Polk. This would necessitate the use of three ballot boxes. We find nothing in the statute authorizing or requiring this. Appellants say that they are not concerned in the number of ballot boxes, if they are permitted to vote as they would like to, and separately from the town population. Nor do we find anything in the statute, either expressed or implied, requiring a separate ballot box for any particular class of people, either school teachers, doctors, lawyers, or agriculturists. While the real contention of appellants is as above stated, the argument is—and they argue it strenuously—that, from the very start, the legislature has intended that the rural voters shall vote separately from the voters residing in a city, town, or village of 200 or more. It is doubtless true, as before pointed out, that the earlier statutes did provide that those residing within the corporate limits of the town should vote separately from those outside. But this was changed, or at least modified, by the last enactment. Manifestly, the legislature, in amending the former statute that did clearly provide for such separate voting, intended to change, to some extent at least, the former rule. It may be, as contended by appellees, that the change was made to prevent one class of voters from defeating consolidation, as against a substantial majority of all classes. At any rate, it is clear, as already stated, that the legislature intended to change the former statute in regard to the provision that all voters within the corporate limits of the town should vote separately from those outside. The legislature could readily have provided that, if a town of 200 or more was partly within two school corporations, the voters residing within the incorporated limits of the town should vote separately from those of the surrounding territory. This the legislature did not do. To construe the present statute as contended by appellants would, it seems to us, change the purport of the statute and the purpose and intention of the legislature. The statute does not require a separate ballot box in every school corporation containing a city, town, or village, but

only where the school corporation contains a city, town, or village of over 200 population. School district No. 4 Polk, in the instant case, does contain a part of the town, but only a small population resides within such limits of the town. The interests of these few are more likely to be with the rural inhabitants in the district of which they form a part. In such a case, we think the legislature, in fixing the population limit, intended that a smaller number than 200 would not be entitled to vote separately from the rural population. A situation might arise where it would operate to the advantage of the rural voters not to vote entirely separately from the voters within the town or city limits. Suppose that the town of Packwood, instead of having 250 voters, contained 4,000, one half of whom resided in No. 4 Polk, and the others in No. 9, with, say, 200 or 300 rural voters. In such a case, the voters in the city or town, voting together, or substantially so, would outnumber many times the rural voters. Appellees argue, and cite authority to support their proposition, that, where the language used in a statute is clear, explicit, and positive, the rule that the real intention of the legislature, when ascertained, will prevail over the literal sense, has no application; and that it is only where the language of the statute is doubtful, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, that the court is required to ascertain the direct meaning; and further, that an exception not made by the legislature cannot be read into the statute. Appellants cite a number of cases as to the general rules of construction.. Neither party seriously disputes the legal propositions of the other, and many of these rules are so well settled that we deem it unnecessary to now repeat the reasoning of the cases.

We are of opinion that the trial court properly sustained the demurrer, and the ruling is—*Affirmed.*

EVANS, C. J., WEAVER, STEVENS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.