# IN THE COURT OF APPEALS OF IOWA

No. 15-1084
Filed September 10, 2015

**IN THE INTEREST OF J.P.,**
   **Minor Child,**

**C.P., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Story County, Steven A. Owen, District Associate Judge.

A mother appeals an order terminating her parental rights. **AFFIRMED.**

Nicole Facio of Newbrough Law Firm, L.L.P., Ames, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Steven Holmes, County Attorney, and Jesse T. Ramirez, Assistant County Attorney, for appellee.

Christopher Clausen of Moothart & Clausen Law Offices, Ames, for father.

Shannon Leighty, Nevada, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, J.**

A mother appeals from a juvenile court order terminating her parental rights to her child, J.P., under Iowa Code section 232.116(1)(e) and (h) (2013). The mother argues the State failed to prove the grounds for termination by clear and convincing evidence. She also contends termination is not in the child's best interests.

## I.      Background Facts and Proceedings

J.P., born in July 2012, is the third child born to his mother. J.P.'s mother and father were never married. The Iowa Department of Human Services (DHS) became involved with the family in May 2013 when it was reported that the mother had failed to follow through with arranged medical tests to determine whether J.P. suffered from cystic fibrosis.[1] DHS conducted a child protective assessment that revealed allegations that the mother had engaged in illegal substance abuse. Based upon these allegations, the mother consented to a drug screen and J.P., who was ten months old at the time, tested positive for the presence of THC in his body. The mother also tested positive twice for THC while the father and his wife tested negative. Voluntary services were offered to the mother through June and July 2013, in which she was generally cooperative.

In early August 2013, the mother was arrested while her three children were in the vehicle, two of whom were not safely buckled, for possession of drug paraphernalia and a controlled substance (marijuana). Following this arrest, DHS filed a child-in-need-of-assistance (CINA) petition and the court ordered

---

[1]  J.P.'s father ultimately took J.P. in for the necessary medical testing and it was determined that he does not suffer from cystic fibrosis.

temporary removal of the children from the care of their mother and placement of the children with their fathers. In late August, following the removal of her children, the mother began making threats of violence to the fathers of her children, the fathers' family members, and local DHS workers, resulting in the mother's arrest for harassment and the issuance of no-contact orders that were later modified to permit visitation.

In September 2013, the mother's family applied for involuntary hospitalization of the mother due to concern regarding the mother's mental state following the removal of her children from her care. The mother was committed to outpatient treatment in which she initially participated but did not follow up with treatment as recommended by her psychotherapist and medication provider. In November 2013, J.P. was adjudicated and confirmed CINA and remained removed from his mother's care and custody and placed with his father. Dispositional review hearings were held in January and June 2014, in which J.P. was again confirmed CINA and ordered to remain out of his mother's care and custody and placed with his father.

In August 2014, after J.P. had been removed from his mother's care and custody for approximately one year, the court held a permanency hearing at which the mother did not appear. At the time of the permanency hearing, the mother had been noncompliant with random drug screens and substance abuse evaluation and treatment requirements, mental health evaluation and treatment requirements, providing her current contact information, and had two active arrest warrants that prevented her from participating in visitation with her

children.[2] The juvenile court noted that although visitation was reportedly going well, the visits were of short duration and were controlled and supervised in public places. The juvenile court further noted significant safety concerns regarding the mother's care and custody of J.P. because she was "unable to continually address substance abuse and mental health issues." The juvenile court directed the State to file a petition for termination of parental rights and ordered that J.P. remain in the care and custody of his father.

In November 2014, the State filed a petition for termination of parental rights. In December 2015, the mother began serving a ninety-day jail sentence and in January 2015, the court held a reasonable efforts hearing in which it denied the mother's request for visits with J.P. while incarcerated. The juvenile court held the termination-of-parental-rights hearing across two and a half days in March and April 2015.

In June 2015, the juvenile court entered an order terminating the parental rights of the mother to J.P. In making this determination, the juvenile court concluded that J.P. could not be returned to his mother's care at the time of the termination hearing because she was unemployed, had unstable and inadequate housing, had no means to support him on a long-term or sustainable basis, and had failed to comply with the case permanency plan that would have led to reunification. The juvenile court considered testimony from case workers that the mother was appropriate and exhibited good parenting skills during supervised

---

[2] As a result of the active arrest warrants, visitation between the mother and her children was suspended from mid-May 2014 to early June 2014 and again from early July 2014 to mid-September 2014.

visitation, but noted that the visits never progressed beyond supervised visitation and instead actually decreased in length and frequency throughout the case due to the mother's criminal activity. The juvenile court found "that termination of parental rights is in [J.P.]'s best interest and is the most likely avenue for him to achieve permanency in a safe, stable and nurturing home" because the mother had failed to address her substance abuse and mental health issues adequately. Finally, in considering exceptions to termination, the court concluded that none applied to J.P.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the child. *Id.* at 776.

## III.    Analysis

The juvenile court terminated the mother's parental rights to J.P. under Iowa Code section 232.116(1)(e) and (h). When a juvenile court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* at 706.

Under section 232.116(1)(h), the court may terminate parental rights if the court finds that the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parents for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parents at the time of the termination hearing.  Iowa Code § 232.116(1)(h).

The mother does not dispute that J.P. is three years old and has been adjudicated CINA.  Her argument on appeal focuses on the third element,[3] arguing that because he has remained in the care and custody of his father throughout the life of this case, J.P. has not been removed from the physical care and custody of his parents for at least six of the last twelve months, or the last six consecutive months.  The mother argues that J.P. was in his father's care and custody at the time of the removal, and therefore, he was never really removed from his home.  The mother bases her contention on the fact that the father had acknowledged paternity of J.P. and the court had not entered an order establishing custody or terminating parental rights.  *See In re J.R.H.*, 358 N.W.2d 311, 319 (Iowa 1984) (holding that in a disposition proceeding following a CINA adjudication, a mother continued to have a right to legal custody until or unless there was an order of court denying her custody or termination her rights).  But

---

[3]  The State contends that the mother should have appealed the Temporary Removal Order and the CINA Dispositional Order in order to claim on appeal that the grounds for termination had not been proved, i.e., that the child had not been removed from the care of his mother for six consecutive months.  The State's argument that the mother failed to preserve error on this issue is misguided because the mother is appealing the grounds for termination, which could not have been raised at an earlier time.

while the father may have been sharing in the care of J.P. prior to the time of removal, that was by agreement of the parties. He had acknowledged paternity, but no court order had been entered establishing his rights to custody or visitation. *See* Iowa Code §§ 600B.40, 252A.3A. J.P. resided with the mother prior to the removal and was voluntarily placed in the care and custody of the father at the recommendation of DHS. That voluntary placement was later approved by the court and became an order of the court. Additionally, the goal throughout the life of the case was to return J.P. to the care of his mother rather than to simply return him to the care of a biological parent.

The mother also relies on *In re A.T.* to say that J.P. was never removed from the home or his parents' custody because he was always in the care and custody of his father. *In re A.T.*, 799 N.W.2d 148 (Iowa Ct. App. 2011). But *In re A.T.* is distinguishable from the present case because there, the district court had affirmatively placed custody of the child with the father in the dissolution decree, thus when the child was placed with the father upon the child's removal from the mother, the child "was already 'home' pursuant to the court's decree." *In re A.T.*, 799 N.W.2d at 154. Further, the court in *In re A.T.* was considering a permanency order following a CINA adjudication under a different statutory scheme than is applied in termination cases. *Compare* Iowa Code § 232.104(3)(c) ("child cannot be returned to the child's home") *with* § 232.116(1)(h)(4) ("child cannot be returned to the custody of the child's parents"). The mother's argument focuses on "the child's home" rather than on the section 232.116(1)(h) statutory term "physical custody of the child's parents."

We must consider the significance of the section 232.116(1)(h) phrase "removed from the physical custody of the child's parents." It would seem that the mother is really arguing that removal must have been from "the child's parents," that is, both parents for the applicable time period. Thus, the question is whether juvenile court placement of the child with one parent can negate the statutory significance of removal from the other parent, thus permitting termination of parental rights as to the other parent. Iowa Code section 4.1(17) directs: "Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular." This statutory provision "avoid[s] the necessity of using both singular and plural words throughout the Code." *Grove v. City of Des Moines*, 280 N.W.2d 378, 384 (Iowa 1979). After an examination of the entirety of section 232.116(1), and considering the legislative intent, it is clear to us that under section 232.116(1)(h) one parent may have parental rights terminated while a child remains in the care of the other parent. *See In re N.M.*, 491 N.W.2d 153, 155–56 (Iowa 1992) (holding that section 232.116(1)(d) permits the termination of parental rights as to one parent even though the child is placed in the care of the other parent); *see also* Iowa Code § 232.1.

J.P. was in the care and custody of his mother at the time of the removal and placed in the care and custody of his father in August 2013. J.P. has remained out of the care and custody of his mother since August 2013 with no trial periods at home. Accordingly, we find clear and convincing evidence that the State has proved that the child was removed from the care and custody of his

mother for at least six of the last twelve months, or the last six consecutive months even though the child remained in the care of his father.

Regarding the fourth factor, the mother contends that the juvenile court erred in finding that J.P. could not be returned to his mother because she was living in an unstable and inadequate residence and that she had no means to support her children. All of the witnesses who testified at the termination hearing except the mother agreed that the child could not be returned to the mother's care and custody at that time. Upon our review of the record, we agree.

At the time of the termination hearing, J.P. was almost three years old. He was adjudicated CINA in the November 2013 adjudication order. He had been removed from the mother's care since August 2013 with no trial periods at home. Over the life of the case, visitation remained supervised and decreased in length and frequency due to the mother's criminal activity and avoidance of active arrest warrants. At the time of the hearing, the mother was living in her sister's home and sharing a bedroom with her fourth child, the rest of the home being occupied by her sister's family. The DHS case manager testified that the mother had not shown that she was able to make the long-term changes necessary for the return of J.P. to her care. For these reasons, we find clear and convincing evidence that J.P. could not be returned to the care and custody of his mother at the time of the termination hearing and grounds for termination exist under Iowa Code section 232.116(1)(h).

Next, the mother contends that termination of her parental rights as to J.P. is not in his best interests. She argues that the juvenile court erred in concluding

that J.P.'s reference to the mother as "mom" is superficial and that he does not have a significant bond with his mother or his brothers. In determining whether to terminate parental rights, the court follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a statutory ground for termination exists under section 232.116(1). *Id.* Second, the court must give consideration to the child's best interests. *See* Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d at 40. Finally, the court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply.[4] *In re P.L.*, 778 N.W.2d at 39.

In considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). DHS has been involved in J.P.'s young life for two of his three years and the mother has failed to make any significant progress during this time. Visitation has never progressed to overnight or unsupervised visits and in fact has decreased in length and frequency. The mother's housing and employment are unstable. The mother has continued to neglect her mental health and substance abuse issues and admitted that it took her a while to do so and that it was not until September

---

[4] Iowa Code section 232.116(3)(c) provides that the court need not terminate parental rights if it determines that "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Although the mother argues she shares a close bond with J.P. and that he also shares a close bond with his brothers, she does not contend the statutory exception provided under Iowa Code section 232.116(3)(c) applies to prevent termination. Therefore, we assume the mother argues under Iowa Code section 232.116(2), which provides for a more generalized best-interests analysis.

2014, over a year after J.P. was removed from his mother and placed with his father, that she made a shift to address these issues. J.P. requires stability and permanence and can find that with his father and his father's wife, who is willing to adopt J.P. We find, therefore, that the long-term nurturing and growth of the child, and his physical, mental, and emotional needs will be best met by terminating the mother's parental rights.

## IV. Conclusion

On our de novo review, we find clear and convincing evidence supporting termination of the mother's parental rights and affirm under Iowa Code section 232.116(1)(h). We further find termination is in the best interests of J.P.

**AFFIRMED.**