WAYNE WALLER et al., Appellants, v. W. S. PRITCHARD et al.,
Appellees.

**MUNICIPAL CORPORATIONS:** Fiscal Management—Unauthorized
1   **Debt—Curing Illegality in Contract.** Any invalidity in a contract
for the construction of a street improvement arising from the fact
that the contract contains a clause which *might* be construed as
imposing on the city an absolute indebtedness beyond its legal power
to contract is cured by the act of the city council and its contractor
in mutually agreeing, *before any part of the contract has been per-
formed,* that said clause should be deemed wholly eliminated, and by
the subsequent execution of said contract in strict accord with said
agreement and the statute.

**MUNICIPAL CORPORATIONS:** Fiscal Management—Funding Bonds
2   **—Time Limit to Question Legality.** The legality of funding bonds
of a city, issued to satisfy a judgment rendered for a deficiency aris-
ing in the construction of a street improvement (because the city
might have, but did not, assess the private property sufficiently high
to pay the entire cost), may not be questioned "from and after"
three months from the time the city council orders the bonds issued,
even though said deficiency was 50 per cent in excess of the statu-
tory limit of indebtedness of the city.

**Headnote 1:** 28 Cyc. p. 1048 (Anno.)    **Headnote 2:** 28 Cyc. p. 1745
(Anno.)

*Appeal from Hancock District Court.*—C. H. KELLEY, Judge.

MARCH 17, 1925.

REHEARING DENIED JUNE 21, 1926.

SUIT in equity, to enjoin the payment of certain bonds is-
sued by the town of Garner, for paving purposes. Two classes
of bonds are under attack: (1) town improvement bonds; (2)
funding bonds. The defendants named are the officials of the
town of Garner, the treasurer of the county of Hancock, and the
contractor. A bondholder intervenes, and joins with the de-
fendants. There was a decree dismissing the petition, and the
plaintiffs appeal.—*Affirmed.*

*Wichman & Hastings* and *Clark & Byers,* for appellants.

*Ramsay & Blackstone* and *Stipp, Perry, Bannister & Starzinger,* for appellees.

EVANS, J.—I.   The petition assails the validity of a certain paving contract entered into by the town of Garner with the defendant contractor· in March, 1920, for paving to be constructed upon the streets of such town.   The contract was fully performed long before its validity was assailed.   The ground of attack is that the legal effect of the contract was to create an indebtedness of the town which was in excess both of the constitutional and of the statutory limit of indebtedness; that the contract was, therefore, wholly void;* that, because such contract was wholly void, all proceedings thereunder were likewise void; that the bonds under attack were issued only pursuant to the provisions of such contract, and were void for that reason. The  contract provisions for payment for the work are all contained in the last part of the contract, as follows:

"And in consideration of the agreements and covenants herein contained on the part of said contractor, *said town of Garner agrees to pay in the manner, and out of the funds hereinafter stated*: The sum of $3.56 per sq. yd. for reinforced concrete paving.   The sum of $1.30 per sq. yd. for excess grading. The sum of $68.00 each for catch basins, complete with casting. The sum of $75.00 each for inlets, complete with casting.   The sum of $85.00 each for manholes complete with casting.   The sum of $2.00 per lin. ft. for 10" vit. sewer pipe laid.   The sum of $0.33 per sq. ft. for sidewalks.   The sum of $15.00 per cu. yd. for extra concrete base.   The sum of $0.55 per sq. ft. for concrete drive returns.   The sum of $1.74 per lin. ft. for curb and gutter (if any).   The sum of $0.94 per lin. ft. for curb 6" x 18" (if any).

"The price of paving to include all work outside of excess grading and excess concrete necessary for contractor to do to construct the improvement.   The concrete headers at the ends of the pavement and the header rails at the railroad crossings to be measured with and paid for as paving.   *Payment shall be made thereon and therefor upon completion of* said improvements or of any portion thereof at the end of the first season, according to contract and upon notice and proceedings required

by the laws of the state of Iowa, *said town council shall make a special assessment for said street improvement as provided by the laws of the state of Iowa, and especially by Sec. 792 of the Code of Iowa and amendments thereto and supplementary thereof, and the same shall be made in accordance with the provisions of Sec. 792-a of the Supplement of the Code of Iowa, 1907, and shall be limited to the amount to be assessed* against private property against all lots and parcels of land according to area so as to include one half of the privately owned property between the street improvement and the next street, whether such privately owned property abuts upon said street or not, but in no case shall privately owned property situated more than 300 feet from the street so improved be so assessed. Such assessments shall not exceed 25 per cent of the actual value of the lot or tract at the time of the levy, and shall be made as provided by the laws of the state of Iowa. Costs of the intersections shall be prorated over all property chargeable with said improvement and the amounts shall be in accordance with the laws of the state of Iowa. All cost of said improvement not assessed to abutting property and to property chargeable with said assessment under the laws of the state of Iowa shall be paid by warrants or bonds on the town improvement fund or such other fund as may be applicable thereto. *In anticipation of the payment of such special assessment to abutting property* which shall not be paid to the said town at the time payment is due the contractor, the town council shall authorize and direct the mayor and town clerk of said town to issue street improvement bonds with interest coupons attached, *payable only* out of the proceeds of such special assessments when *collected as provided by law, bearing interest at a rate not exceeding 6 per cent per annum, payable annually.* [The town shall sell all bonds and pay the contractor in cash. All in accordance with and as authorized by the laws of the state of Iowa, and not otherwise.]''

The foregoing is a sufficient setting forth of the contract for the purpose of this case. No attack is made upon the procedure pursuant to which the contract was entered into. The work thus contracted for actually cost upwards of $380,000, of which the contractor received about $360,000. The constitutional limit of indebtedness of the town was $80,000, and the

statutory limit was $20,000. The value of the property abutting upon the improvement was such that the entire cost thereof could legally have been levied upon the abutting property. By appropriate procedure, the town issued $9,500 of street improvement bonds, which were used in payment for the improvement. When the contract was completed, there was a deficiency due the contractor, over and above the full amount of all special assessments and the street improvement bonds, to the amount of $43,000. The contractor took judgment against the city for this amount. Thereafter, the city issued funding bonds for the payment of such judgment.

The primary question presented to us is: Was the contract in question void? If yea, then such holding must be predicated upon the terms of the contract itself. The fact, if such, that the performance of the contract resulted in a deficiency over and above the special assessments, and that such deficiency was in excess of the statutory limit of indebtedness permitted to the town, could not be effective to render the contract void *ab initio*. This is so because there was nothing in the terms of the contract that rendered necessary an excessive deficiency. *Corey v. City of Ft. Dodge,* 133 Iowa 666. All obligation of payment by the city could have been met by legal special assessments. Concededly, this would not be the creation of an indebtedness, within the meaning of Constitution or statute.

1. MUNICIPAL CORPORATIONS: fiscal management: unauthorized debt: curing illegality in contract.

Recognizing this fact, the appellants present as their fundamental proposition that the contract was rendered void by its own terms, because its legal effect was to create an indebtedness of $380,000. The argument is concentrated upon two sentences in the contract. For convenience of reference, we have inclosed such sentences in brackets, in the copy above set forth. They are the last two sentences in the contract, and are as follows:

"The town shall sell all bonds and pay the contractor in cash. All in accordance with and as authorized by the laws of the state of Iowa, and not otherwise."

It is contended that the effect of these sentences is to convert into a purported absolute indebtedness on the part of the city, all the payment obligations imposed by the contract upon

the city; and that such infirmity in the contract was incurable by any subsequent action of the parties' in relation thereto. Manifestly, this provision can be literally construed so as to render it quite inconsistent with and quite contradictory to all the provisions of the contract pertaining to special assessments. Manifestly, also, it is not impossible to give it a construction in harmony with such other provisions.

It appears from the evidence that, on and prior to the execution of this contract, the city council had a standing contract or offer from a bond broker, Schanke, to purchase all the bonds of the city issued for sewer or paving improvements, on the basis of $5\frac{1}{2}$ per cent interest. The bonds to be issued in this case would bear, under the statute, 6 per cent interest. With a view of saving to the abutting property owners the one-half per cent, the city council reserved the privilege of selling the bonds and paying cash to the contractor. After the contract was entered into, Schanke canceled his standing offer or contract. The city council immediately notified the contractor of their wish or purpose to withdraw such proviso. The contractor appeared before them at a regular meeting, and then and there acquiesced in the proposed withdrawal of such provision. Within the mutual purpose of the parties to the contract, this proviso was erased. This occurred on May 29, 1920, and before any part performance of the contract by either party. Thereafter, both parties mutually construed the contract precisely according to its terms, without any reference to such objectionable proviso. In other words, both parties mutually construed the contract, by conduct throughout the performance thereof, in strict accord with the provisions of the statute. Except for the deficiency, no payments were made to the contractor or demanded by him except the delivery of the proceeds of special assessments, either in cash or in bonds. If the proviso in question could thus be legally eliminated, the appellants do not contend that the contract was otherwise invalid. We are clearly of the opinion that the construction which the parties put upon their contract, and to which they mutually adapted their conduct, was permissible, whether such proviso were *included* or *excluded* therefrom. In the light of the other special provisions of the contract which we have italicized for convenience of reference in the above quota-

tion, such proviso should be construed consistently therewith, if possible. It could be construed, not unreasonably under such rule, as a reservation by the city council of the privilege of selling its own bonds and turning the cash received therefrom to the contractor, *provided that this could be done "according to law."* Neither party purported to bind itself to any action which was not "according to law."

We are of the opinion also that it was competent for the parties to eliminate such provision in the manner in which they did, inasmuch as it was done before any liability had been created by part performance of either party. It will hardly be contended that the proviso could not have been eliminated on the day the contract was signed. Nor do we perceive any disability in the parties to eliminate the same thereafter, especially while the contract lay dormant and wholly unperformed. *In re Appeal of Mayden,* 156 Iowa 157, 160.

The proviso at most was a mere appendix, attached to a contract already complete; and its function was quite as casual and nonessential as that of its anatomical namesake. It did not necessarily interfere with the essential provisions of the contract. The worst that can be said is that it carried the potential of illegality. In the actual performance of the contract, it might be construed so as to become the seat of illegality, and might thereby, like an infection, prove fatal to the whole body of the contract. Undoubtedly it were better to cut it out than to leave it in. The argument of appellants at this point is predicated largely upon *Allen v. City of Davenport,* 107 Iowa 90. We do not think that the case at bar comes within the discussion of that case. In that case the city was already indebted to the full constitutional limit. It entered into a contract which by its terms clearly increased its indebtedness. It began to pay the contractor out of its general fund, in violation of the constitutional limit. It proposed to reimburse itself thereafter, by levying special assessments. The performance of the contract was enjoined at the beginning of the attempted performance.

Suppose that, in the case at bar, the plaintiffs had sought an injunction against the city on the ground now pressed, on or before May 29, 1920. We think that in such a suit the court

could properly enjoin the performance of the objectionable proviso, and refuse injunction as to the rest of the contract. For the same reason, it could permit the parties themselves to eliminate such objectionable proviso. We think that the objectionable proviso was clearly severable from the rest of the contract, and that it could be separated therefrom by the mutual acquiescence of the parties, as readily as it was appended thereto. We hold that the alleged infirmity in the contract was fully cured by the mutual conduct of the parties in eliminating the same, before attempted performance.

II. The improvement bonds under attack were issued pursuant to the provisions of Section 830, Code of 1897, Section 792-f and Section 912-a, both of the 1913 Supplement, and Section 894, Paragraph 2, of the 1915 Supplement. No irregularity in the procedure is pointed out. As already indicated, the charge of invalidity as against them is predicated upon the invalidity of the original contract. Our conclusion announced in the foregoing division thereby becomes decisive of the validity of these bonds.

III. The question remains as to the validity of the indebtedness for the deficiency due the contractor over and above the special assessment bonds. Under the statute, the city had power to pay from its general fund for paving improvement and to incur indebtedness therefor to the statutory limit. Section 792-b, 1913 Supplement; Section 751, 1915 Supplement; *Ottumwa Brick & Const. Co. v. Ainley*, 109 Iowa 386; *Shelby v. City of Burlington*, 125 Iowa 343.

2. MUNICIPAL CORPORATIONS: fiscal management: funding bonds: time limit to question legality.

If the deficiency in this case had not exceeded the statutory limit, there could be no question of the liability of the city for such deficiency, under the contract. But the deficiency exceeded the statutory limit. Notwithstanding such excess, the contractor obtained judgment against the city, and the city, proceeding under Section 905 of the Code of 1897, issued funding bonds, whereby the judgment was satisfied.

As to these bonds, the appellants contend that the judgment was collusive between the city council and the contractor; and that it should not, therefore, be deemed a conclusive adjudication of the validity of the indebtedness; and that the bonds

should be held void, at least to the extent of their excess above the statutory limit. On the other hand, the appellees not only deny the collusion as to obtaining the judgment, but they plead the bar of limitations of Section 913 of the Code of 1897, and plead further that the bonds had passed into the hands of an innocent holder. The innocent holder is in court as an intervener, making such claim for herself.

If it were open now for the appellants to contest the judgment, either directly or collaterally, they could so contest it only as to the amount thereof. The judgment itself has been satisfied by the acceptance of the bonds issued for that purpose. Taxes have been levied for the purpose of paying the bonds, as required by statute. The bonds have been negotiated, and are in the hands of innocent holders. The attack now is necessarily confined to the validity of the bonds. That these facts present great obstacles in the way of any relief to appellants, is quite manifest. *Rankin v. City of Chariton*, 160 Iowa 265; *Edmundson v. Independent Sch. Dist.*, 98 Iowa 639; *S. C. & St. P. R. Co. v. County of Osceola*, 45 Iowa 168; *Independent Dist. of Rock Rapids v. Society*, 98 Iowa 581. In view, however, of our conclusion upon the defendants' plea of the statute of limitations, we shall confine decision at this point to that question.

The funding bonds were issued pursuant to Section 905, Chapter 12 of Title V, which provides as follows:

"Cities and towns may settle, adjust, renew or extend the legal indebtedness they may have, or any part thereof, in the sum of one thousand dollars or upwards, whether evidenced by bonds, warrants or judgments, and may fund or refund the same and issue coupon bonds therefor, but no bonds shall be issued under this section for any other purpose than is above authorized."

Section 913 of the same chapter provides as follows:

"No action shall be brought questioning the legality of any of the bonds authorized by this chapter, waterworks bonds, gasworks bonds, or electric light or power plant bonds, from and after three months from the time the same are ordered issued by the proper authority."

Appellants contend that these sections of the statute are not applicable, because the indebtedness upon which the judg-

ment was entered, was not a "*legal* indebtedness." But that is the very question sought to be litigated. It is the very question which is barred from litigation, if the statute is construed to function at all. If the holder of the bond must prove the legality thereof, and of the judgment for which it was issued, before he can avail himself of the statute bar under Section 913, then the statute of limitation has no function to serve. If the bondholder affirmatively proves the legality of all prior procedure, he has no occasion to plead the statute of limitation. The very purpose of a statute of limitation is to cure imperfection and to give repose against litigation.

The manifest purpose of this statute is to facilitate, in the interest of the city, the negotiation of its bonds at low rates of interest. The time provided is short, and is yet long enough. The challenge to the validity of bonds which are about to be offered to innocent purchasers, should be made promptly, if it is to be made at all. Negotiable paper which is to be floated at low rates of interest must needs carry a good title and good security, and must be virtually incontestable. This is the prime inducement to a low rate of interest. A lawsuit is not salable at par, nor at a low rate of interest. A contestable bond is not salable, unless it be in the marts of salvage and wreckage. These are the considerations which induced the statutory limitation here under consideration. The procedure antecedent to the issue of a municipal bond receives statutory publicity at its successive stages. Its deliberation is more or less dilatory. When it is done, the illegalities, if any, are readily discoverable. The final statutory act is to hold open the right of challenge for a period of three months, and at the expiration of that time to close such door. This is salutary in its purpose, and operates, on the whole, to the advantage of the city and of its taxpayers. The suit at bar was not brought within the statutory time. We hold that it is barred by Section 913.

The decree of the district court is, accordingly, affirmed.— *Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.