Carl **MAMMEL**, Trustee of the Mammel Family Farm Trust, Dated July 1, 1981, Appellant,

v.

**M & P MISSOURI RIVER LEVEE DISTRICT: The Board of Supervisors of Pottawattamie County, Iowa, Namely: Wayne Rodenburg, Elliott Butler, Arlene Steege, Hubert Houser and Donald Smith, and The Board of Supervisors of Mills County, Iowa, Namely: Walter A. Marshall, Creighton Miller, and Virgil W. Curtis; acting for and on behalf of the M & P Missouri River Levee District, Appellees.**

No. 67150.

Supreme Court of Iowa.

Nov. 24, 1982.

---

Philip Willson and Steven H. Krohn of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant.

Jay W. Longinaker of Eaton, Eaton & Longinaker, Sydney, for appellees.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS, and LARSON, JJ.

LARSON, Justice.

The plaintiff trust is the owner of farm land abutting the Missouri River in Mills County. The board of supervisors of Mills and Pottawattamie counties established a two-county drainage district, Iowa Code chapters 455 and 457, which included this land, then owned by Dr. Jose V. G. Angel. The land was subsequently transferred to this plaintiff, whose claims for right-of-way and consequential damages were determined by the joint board to be untimely. On judicial review the plaintiff contended that notice of the original hearing on establishment of the drainage district was constitutionally insufficient both as to its manner of service and content and that the board lacked jurisdiction to proceed with its establishment. The district court concluded the notice satisfied constitutional standards and granted summary judgment for the defendant district. We affirm.

The project in controversy had its genesis in 1968, when a group of landowners petitioned for the establishment of a levee district to build and maintain a series of levees and other improvements along the Missouri River. In 1977 the supervisors of Mills and Pottawattamie counties took action as a joint board, Iowa Code section 457.2, to

appoint commissioners and an engineer to study the project. Reports of the commissioners and engineer were filed with the joint board, which then set the matter for public hearing.

Notice of the hearing, in the form prescribed by Iowa Code section 455.20, was published in newspapers of general circulation in each of the two counties and was sent by ordinary mail to each of the affected landowners, as directed by section 455.21.

## I. *Contents of the Notice.*

The published and mailed notice of hearing named each of the landowners, including Dr. Angel, and set out the boundaries of the proposed district. It advised the owners that there was a petition on file in the Auditor's Offices of the respective counties for establishment of a joint district; that the commissioners' report and the engineer's report, which recommended establishment of the district, were also on file and had been tentatively approved by the joint board. It informed the owners of the date, time, and place of hearing and that

all claims for damages, except claims for land required for right-of-way and borrow, and all objections to the establishment of said levee district for any reason must be in writing and filed in the office of the Auditor of the County in which the claimant or the objector's land is situated at or before the time set for hearing or alternatively file same at the time and place of hearing, failing which, same will be waived.

The content of the notice, specifically the provision respecting claims for damages, closely track the requirements of section 455.20. Dr. Angel did not file a claim within the time set out in the notice. Mammel (the present owner) claims, however, that the notice was insufficient to effect a waiver of his claim for several reasons.

Dr. Angel denied receipt of the letter and denied reading the notice in the paper. He stated in an affidavit that he first learned of the matter through his tenant after actual construction had begun. Mammel contends that, even assuming notice had been received, its content was insufficient to comply with due process.

The constitutional test for notice cases is prescribed by *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950):

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

(Citations omitted.)

The plaintiff looks to *Mullane* for support, claiming the notice was "so vague, ambiguous and confusing" that it cannot be considered to be sufficient notice of the nature of these proceedings. He claims the notice should have detailed how the proposed plan would affect the specific property of each landowner; that it should have set forth the place, date, and time of the proceedings on damages, or that they could thereafter contest their award to the board, and later to a court; and that it should have apprised them their property was actually going to be appropriated for the project. Mammel also argues that construction would actually be done on this farm, and that greater care must be exercised in informing such an owner as contrasted to an owner on the periphery of the project whose land was merely subject to a tax levy. Furthermore, Mammel claims, the notice was confusing. The statement in the notice that "all claims for damages, except claims for right-of-way and borrow" must be filed by a certain time was "buried" near the end of the notice and did not reasonably inform owners of any proceedings to follow or the manner of perfecting a

claim. Under the circumstances of this case, it is argued, this notice was not "of such nature as reasonably to convey the required information" and thus fails the *Mullane* test.

The district responds that the notice contained information to alert each landowner the proposed plan might affect their property and that if there were any doubt, to consult the documents in the auditors' offices. Moreover, they allege it would be impractical, at best, to notify each of the numerous landowners exactly how the proposed plan would affect their property, since it was subject to change before final approval under section 455.28. The district also contends the reference to timely filing of claims could not reasonably have been misleading to Dr. Angel: his claim was for consequential damages, based on the fact the project dissected his farm and interfered with its operation. As such it was not a claim for right-of-way or borrow and, as stated in the notice, was required to be filed at or before the hearing.

The plaintiff points out that analogous statutes prescribing notice to landowners, such as in condemnation cases, Iowa Code section 472.9, require a description of the land which is actually going to be seized, as opposed to a description of all land affected by the plan, and to inform landowners of their right to a compensation hearing. According to the plaintiff, anything less is no notice at all. The district responds that the notice of drainage district establishment does not require those details and a comparison to such statutes, as section 472.9 merely shows the legislature knew how to require such details if that was its intent.

In *Roznos v. Town of Slater,* 254 Iowa 77, 116 N.W.2d 471 (1962), a notice of hearing on a proposed sewer project was challenged on the ground it lacked details of the proposed project and contained erroneous street designations. The notice did, however, give a legal description of affected lots and stated further details were on file in the office of the clerk. It also set out the time and place of hearing on the issue and stated that unless timely objec-

tions were filed, they would be waived. This court held the notice was sufficient to comport with due process requirements. The area affected was described. Even though there were errors in street designations, landowners could tell from the descriptions in the notice that their land was affected, even though they were not individually named in the notice. It was also noted that concerned owners could have taken steps to further inform themselves through examination of the plans which, the notice had informed them, were on file in the clerk's office. Although the notice was not as detailed as it could have been, or as Roznos thought it should have been, the test applied was whether the notice was "so full and clear as to disclose to persons of ordinary intelligence in a general way what it proposed and when and where they may be heard." *Id.* at 83, 116 N.W.2d at 474. The following essential elements of sufficient notice may be gleaned from *Roznos* and the cases it relied upon:

(1) The notice must inform affected parties of the nature of the project. *Id.* at 83, 116 N.W.2d at 474; *Spalti v. Town of Oakland,* 179 Iowa 59, 65, 161 N.W. 17, 19 (1917);

(2) it must inform affected parties that *their* land is involved. *Roznos,* 254 Iowa at 84, 116 N.W.2d at 475; *Davenport Locomotive Works v. City of Davenport,* 185 Iowa 151, 152, 169 N.W. 106, 107 (1918); *Spalti,* 179 Iowa at 63, 161 N.W. at 19;

(3) it must inform them of their right to object or file claims for damages and the consequences of their failure to do so. *Roznos,* 254 Iowa at 85, 116 N.W.2d at 476; *Spalti,* 179 Iowa at 64, 161 N.W. at 19;

(4) it must inform them of the time and place of any required public hearing. *Roznos,* 254 Iowa at 86, 116 N.W.2d at 476; *Spalti,* 179 Iowa at 65, 161 N.W. at 19.

We conclude the contents of the notice in the present case met the test of these cases. It clearly stated the nature of the proceedings—the establishment of a drainage district. While the notice did not give the details of *how* Dr. Angel's land

would be affected, it did inform him his land was involved and put him on inquiry to investigate further by stating specific plans and recommendations were on file in the county auditors' offices. It particularized the notice by providing the legal description of his land and by specifically naming him in the notice.

The most troublesome aspect of the notice is its sketchy information regarding landowners' rights to file claims and the consequences of their failure to do so in a timely manner. We think the claims' language of the notice was sufficient to inform Dr. Angel of the necessity of filing a timely claim: it advised a person that any claim which was not for land or borrow actually taken had to be filed at or before the hearing and would be waived if not so filed. It did not give further details of the claims procedure, but the statute requires none, and we do not believe due process requires it. Dr. Angel was at least advised of the preliminary steps required to file a claim and was put on inquiry that more information was available, and where. The notice followed the language of the statute in regard to the claims procedure and, while it would have been preferable to include more details of the claims procedure, we believe the notice here at least minimally complies with due process requirements.

The last element—notice of the time and place of hearing—was provided here, and Mammel does not challenge the notice on that ground.

## II. *Method of Service.*

Notice of the hearing on the petition to establish the drainage district was served by publication and ordinary mail, which is the manner prescribed by Iowa Code section 455.21 and made applicable to the joint district by section 457.6. Mammel concedes the notice was served according to statute but asserts the manner prescribed by it is not reasonable under the circumstances and fails the test of constitutionality. Dr. Angel and his wife denied receiving the mailed notice and denied having read the notice in the newspapers. Mammel points to this

fact as support for the argument that the notice was not reasonably calculated to reach the owners.

*Mullane* addressed the problem of the manner of service as well as the content of the notice. Regarding the manner of service, the court said:

> [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

339 U.S. at 315, 70 S.Ct. at 657–58, 94 L.Ed. at 874. (Citations omitted.) *See generally* A. Jahr, *Eminent Domain* §§ 217–20, 338–42 (1953); F. James & G. Hazard, *Civil Procedure* § 12.18, at 640–41 (1977); I. Levey, *Condemnation in U.S.A.* § 42, at 452 (1969).

Under these principles the *Mullane* Court held notice by newspaper publication alone would not satisfy due process where the action involved a known defendant's interest in intangible, personal property, *viz.*, common trust funds: "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318, 70 S.Ct. at 659, 94 L.Ed. at 875. It added, however, that due process requirements are less stringent when rights affecting tangible property, as opposed to intangible property, are involved:

> It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment

of a chattel or entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, or that he has left some caretaker under a duty to let him know that it is being jeopardized. As phrased long ago by Chief Justice Marshall in *The Mary* (US) 9 Cranch 126, 144, 3 L.Ed. 678, 684, "It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it."

*Id.* at 316, 70 S.Ct. at 658, 94 L.Ed. at 874 (citations omitted).

As a result of *Mullane*,[1] section 455.21 was amended by the legislature, 1957 Iowa Acts ch. 219, § 1, to provide for notice by publication and ordinary mail to all affected landowners. *Compare* Iowa Code § 455.21 (1950) *with* Iowa Code § 455.21 (1979).

The Supreme Court in *Walker v. Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), considered whether newspaper publication alone was constitutionally sufficient in a proceeding to fix compensation for condemned land. Relying on *Mullane* the Court held such publication was inadequate under due process, although it indicated notice by ordinary mail would have sufficed:

It is common knowledge that mere newspaper publication rarely informs a landowner of the proceedings against his property. . . . In the present case there seem to be no compelling or even persuasive reasons why direct notice cannot be given. [The landowner's] name was known to the city and was on the official records. Even a letter would have ap-

prised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value. *Id.* at 116, 77 S.Ct. at 202, 1 L.Ed.2d at 182.

More recently, in *Schroeder v. New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), the Court considered whether, in another condemnation proceeding, newspaper publication and posted notices in the vicinity of the affected property satisfied due process. Relying on *Mullane* and *Walker*, the Court again held such notice constitutionally inadequate, stating the defendant's obligation to give notice to the landowner was "an obligation which the mailing of a single letter would have discharged." *Id.* at 214, 83 S.Ct. at 283, 9 L.Ed.2d at 260.

We believe the publication and mailing of notice here was reasonably certain to inform parties affected by the project. *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. In reaching that conclusion, we point out that Dr. Angel was the owner of a large tract of land in the flood plain of the Missouri River, that the proposed project was a very extensive one, and that the petition for establishment of the district had been under consideration by the board for nine years.

As the Court in *Mullane* pointed out, the rule governing manner of service in such circumstances are less stringently applied in circumstances where an owner may be expected to arrange means of informing himself of an attack upon his possessory or proprietary interests. *Id.* at 316, 70 S.Ct. at 658, 94 L.Ed. at 874.

The district raises an additional issue: that the plaintiff is "judicially estopped" to raise the notice issues because of allegedly inconsistent positions taken by it in connection with an earlier application for permission to file an interlocutory appeal, which was denied. Under our disposition of this case, it is unnecessary to discuss that issue.

We find no error.

AFFIRMED.

---

1. Prior to *Mullane* this court had held notice by publication under section 455.21 constitutionally sufficient. *Goeppinger v. Boards of Supervisors*, 172 Iowa 30, 152 N.W. 58 (1915); *Taylor v. Drainage District*, 167 Iowa 42, 148 N.W. 1040 (1914), *aff'd*, 244 U.S. 644, 37 S.Ct. 651, 61 L.Ed. 1368 (1916); *Johnson v. Board of Supervisors*, 148 Iowa 539, 126 N.W. 153 (1910).